Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| **ANNETTE MILAGROS SANABRIA FIGUEROA**<br><br>Recurrida<br><br>**v.**<br><br>**WALLACE VÁZQUEZ SANABRIA**<br><br>Peticionario | **KLCE202500447** | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>**BY2023RF00193**<br><br>Sobre:<br>**DIVORCIO RUPTURA IRREPARABLE** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Comparece ante nos, Wallace Vázquez Sanabria, en adelante, Vázquez Sanabria o peticionario, solicitando que revisemos varias órdenes del Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón. En virtud de los dictámenes recurridos, el peticionario fue ordenado a desalojar la propiedad en la que reside.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso solicitado, lo *modificamos y confirmamos*.

### I.

El 2 de mayo de 1996, Annette Milagros Sanabria Figueroa, en adelante, Sanabria Figueroa o recurrida, contrajo matrimonio con el peticionario.[1] Sin embargo, el 6 de febrero de 2023, Sanabria Figueroa presentó una *"Petición de Divorcio Individual"* contra Vázquez Sanabria.[2]

---

[1] Apéndice del recurso, pág. 13.
[2] *Id.*, pág. 10.

Por su parte, el 2 de marzo de 2023, el peticionario presentó su *"Contestación a Demanda y Reconvención"*.[3] En la misma, solicitó la imposición de medidas cautelares. Entre estas, solicitó permanecer en el hogar conyugal, como hogar seguro. Posteriormente, el 20 de marzo de 2023, la recurrida presentó su *"Contestación a Reconvención"*.[4] En su escrito, negó la necesidad de establecer un hogar seguro para Vázquez Sanabria. Además, indicó que la casa que el peticionario solicitó se designara como hogar seguro, es un bien privativo de esta, por lo que procedía el desalojo.

El 1 mayo de 2023 y el 2 de junio del mismo año, el TPI-Bayamón celebró vista para atender la solicitud de medidas cautelares.[5] En el segundo día de la vista, las partes informaron haber llegado a un acuerdo. Determinaron que el peticionario permanecería en la residencia conyugal hasta tanto se finalizara la compraventa del inmueble en cuestión. Además, establecieron que la casa no se vendería por un precio menor de $500,000.00, del cual Vázquez Sanabria recibiría $300,000.00.

En consecución, el TPI-Bayamón notificó su dictamen el 6 de julio de 2023, en el que declaró *"Con Lugar"* la demanda de divorcio disolvió el matrimonio entre las partes y acogió el acuerdo entre ambos.

Surge de los documentos que obran en autos, que el peticionario intentó comprar la propiedad en donde residía, pero la recurrida se opuso por haber decidido venderla a otra persona.[6] Surge, incluso, que el 10 de marzo de 2025, Sanabria Figueroa entabló un *"Contrato de Opción de Compra"* con Nolan Arcadio Vargas Sanabria, en adelante, Vargas Sanabria.[7]

---

[3] Apéndice del recurso, pág. 15.
[4] *Id.*, pág. 23.
[5] *Id.*, pág. 82.
[6] *Id.*, págs. 42-43.
[7] *Id.*, pág. 45.

No obstante, aunque el Foro Recurrido se reiteró en lo ordenado en la sentencia de divorcio, es decir, en la venta de la propiedad en cuestión, el peticionario solicitó a este que reconsiderara.[8] Mediante moción del 28 de marzo de 2025, la recurrida insistió que es la dueña privativa de la casa y que ha decidido venderle la misma a Vargas Sanabria. Además, sostuvo que el TPI-Bayamón debía ordenarle al peticionario abandonar la propiedad, para "entregarle la casa al comprador. Cuando se otorgue la compraventa, la demandante consignará el pago al demandado, con el ruego que se le entregue una vez este desaloje la propiedad".[9]

Mediante orden del 31 de marzo de 2025, el Foro Primario le concedió un término de cuarenta y cinco (45) días al peticionario para desalojar la propiedad objeto de la controversia, se concretizara la compraventa de la misma y se procediera con el pago correspondiente a Vázquez Sanabria.[10]

Poco después, el 6 de abril de 2025, la recurrida otorgó una escritura de compraventa a favor de Vargas Sanabria.[11] Vendida la casa por la cantidad de $500,000.00, Sanabria Figueroa radicó una moción el 7 de abril de 2025 ante el Foro Primario, para consignar la cantidad de $300,000.00 a favor del peticionario, mediante cheque de gerente.[12] Así, el 11 de abril de 2025, el peticionario radicó una *"Moción Solicitando Retiro de Fondos"* ante el TPI-Bayamón.[13] En su petitorio, Vázquez Sanabria anunció que se encontraba evaluando unas viviendas para comprar, cuyo valor superaban los $300,000.00. Por eso, solicitó al Foro Recurrido autorización para retirar el dinero consignado. Por su parte, Sanabria Figueroa replicó mediante *"Oposición a 'Moción*

---

[8] Apéndice del recurso, pág. 42.
[9] *Id.*, pág. 43.
[10] *Id.*, pág. 7.
[11] *Id.*, pág. 51.
[12] *Id.*, pág. 48.
[13] *Id.*, pág. 69.

*Solicitando Retiro de Fondos'"*.[14] Adujo que, conforme a lo ordenado por el TPI-Bayamón, procedía que el peticionario cumpliera con su parte de lo acordado, es decir, con desalojar la propiedad, para recibir el dinero consignado.

Recibidas ambas mociones respecto al retiro de fondos, el TPI-Bayamón emitió una orden el 15 de abril de 2025, en la que reitera la orden del 31 de marzo de 2025.[15] Vázquez Sanabria presentó una *"Moción Urgente Solicitando Vista"* ante el Foro Recurrido, el 17 de abril de 2025.[16] En respuesta, el Foro Primario emitió otra orden el 21 de abril de 2025, en la que se limitó a instruirle a las partes a cumplir con la orden del 31 de marzo de 2025.[17]

Así las cosas, el 25 de abril de 2025, Vázquez Sanabria compareció ante esta Curia mediante *"Moción en Auxilio de Jurisdicción"*, solicitando que intervengamos en el caso de marras, ordenando a la Secretaría del Foro Recurrido a desembolsar los fondos consignados a su favor, de manera que pueda comprar una propiedad y desalojar la residencia actual. Además, presentó un recurso de *certiorari* ese mismo día, en el que hizo el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia (TPI) al entrar en las órdenes recurridas, pues las mismas son contrario a derecho y denota error craso y manifiesto o prejuicio y parcialidad en la apreciación de la prueba presentada.**

Mediante *"Resolución"* del 28 de abril de 2025, declaramos *"No Ha Lugar"* la petición en auxilio de jurisdicción, y le concedimos a la recurrida hasta el 5 de mayo de 2025 para presentar su posición en cuanto al recurso. En cumplimiento de

---

[14] Apéndice del recurso, pág. 71.
[15] *Id.*, pág. 8.
[16] *Id.*, pág. 74.
[17] *Id.*, pág. 9.

orden, el día 5 de mayo de 2025, Sanabria Figueroa compareció ante nos mediante *moción oponiéndose a la expedición del recurso.*

Perfeccionado el recurso de autos, resolvemos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> [. . .]

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *IG Builders et al. v. BBVA PR,* 185 DPR 307, 338-339 (2012); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 LPRA Ap. XXII-B, R. 40.

*BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio,* 211 DPR 871, 902-903 (2023); *Pueblo v. Custodio Colón,* supra, pág. 589; *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). (Énfasis suplido).

### B. Transacción Judicial

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda.* Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1232 del Código Civil de Puerto Rico de 2020, en adelante, Código Civil, 31 LPRA sec. 9753. *Cruz, López v. Casa*

*Bella y otros*, 213 DPR 980, 995 (2024); *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018); *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 727 (2018). Los contratos tienen fuerza de ley entre las partes contrayentes, ante sus sucesores y ante terceros quienes vienen obligadas a observar sus términos en la forma que dispone la Ley. Artículo 1233 del Código Civil, supra, sec. 9754.

Los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la Ley. *Cruz, López v. Casa Bella y otros*, supra; *Betancourt González v. Pastrana Santiago*, supra, pág. 182. Un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio. *Demeter Int'l v. Srio. Hacienda*, supra, págs. 726-727.

Ahora bien, por ser relevante al caso de marras, destacamos que nuestro Código Civil establece que "[p]or el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica". Artículo 1497 del Código Civil, supra, sec. 10641. Ahora bien, las obligaciones que surgen entre las partes, por virtud de acuerdos o contratos de transacción, pueden ser de naturaleza judicial o extrajudicial. *Rodríguez v. Hospital*, 186 DPR 889, 904 (2012). La transacción judicial ocurre cuando, "una vez comenzado el pleito, las partes llegan a un acuerdo transaccional y lo hacen incorporar al proceso en curso". *Id.* Véase, además, *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860, 870-871 (1995). Por otro lado, la transacción extrajudicial es "aquella que se celebra antes de que comience el pleito que se quiere evitar, o cuando una vez

comenzado, las partes acuerdan una transacción sin la intervención del tribunal", para lo cual bastará el mero aviso de desistimiento del pleito, aun cuando las partes tan siquiera mencionen el acuerdo logrado entre ellas. *Rodríguez v. Hospital,* supra, pág. 904.

El derecho estatutario, como nuestra jurisprudencia, ha establecido que los acuerdos transaccionales deben interpretarse de manera restrictiva. Artículo 1499 del Código Civil, supra, sec. 10643; *Berkan v. Mead Johnson Nutrition,* 204 DPR 183, 207 (2020); *Rodriguez v. Hospital, supra,* pág. 904; *US Fire Insurance v. A.E.E.,* 174 DPR 846, 854 (2008); *Blás v. Hospital Guadalupe,* 167 DPR 439, 450-451 (2006). En su análisis sobre la interpretación "restrictiva" de estos contratos – contención que fue ratificada nuevamente por el nuevo Código Civil, supra – el Tribunal Supremo de Puerto Rico ha sostenido que las transacciones se entenderán constrictivas a su contenido. Esto último, excepto si de su texto surge una sugestión necesaria para el ejercicio interpretativo del mismo. *Feliciano Aguayo v. Mapfre Panamerican,* 207 DPR 138, 157 (2021); *Rodriguez v. Hospital, supra,* pág. 904.

Al ejercer nuestra función interpretativa sobre los términos incluidos en un contrato de transacción, "aplican las normas generales sobre la interpretación de contratos en lo que no sean incompatibles con una norma particular de interpretación", incluyendo aquellas relativas a "la necesidad de descubrir la verdadera intención de los contratantes cuando ésta no surge claramente de los términos del contrato". *Fonseca v. Hosp. HIMA,* 184 DPR 281, 291 (2012).

Finalmente, el cuerpo normativo que rige los mismos, establece que los contratos de transacción "produce[n] los efectos de la cosa juzgada". Artículo 1500 del Código Civil, supra, sec. 10644. Por eso, Los tribunales de justicia no pueden relevar a una

parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

### C. Obligaciones Recíprocas

Existen diferentes clases de obligaciones por razón de vínculo. Entre ellas encontramos las unilaterales y las bilaterales. En las obligaciones unilaterales solamente una de las partes está obligada. Por el contrario, en las bilaterales nacen dos obligaciones recíprocas, una de cada parte contratante. J.R. Vélez Torres, *Derecho de Obligaciones, Curso de Derecho Civil*, 2da ed., revisada por Migdalia Fraticelli Torres, Facultad de Derecho, Universidad Interamericana de Puerto Rico, 1997, pág. 58 (Énfasis suplido).

Las obligaciones bilaterales tienen cinco efectos:

*(1) Exigen el cumplimiento simultáneo de las prestaciones;* (2) provocan la retención o abstención recíproca de cumplimiento, hasta que el otro obligado cumpla la prestación que le corresponde; (3) hacen nacer la facultad de pedir la resolución del contrato; (4) provocan la facultad alterna de pedir el cumplimiento específico y la correspondiente indemnización. (5) [s]i las partes así lo pactan, la resolución del contrato puede darse automáticamente, sin necesidad de pronunciamiento judicial.

R. E. Ortega Vélez, *Lecciones: Derecho de Obligaciones*, San Juan, Ediciones Situm, 2012, pág. 23.

Cabe puntualizar que, "[p]ara que existan obligaciones propiamente bilaterales es necesario, no solo que existan prestaciones a cargo de cada una de ellas, sino que entre ambas exista mutua condicionalidad, por haber sido querida cada una como equivalente de la otra". José Puig Brutau, I-II *Fundamentos de Derecho Civil, Derecho General de las Obligaciones* 24 (4a ed. revisada, Bosch 1988). Así, la principal característica de las

obligaciones es la interdependencia de las prestaciones, por lo que suponen también el cumplimiento simultáneo.

Ahora bien, el derecho estatutario dispone que "en las obligaciones de naturaleza recíproca, ninguno de los obligados incurre en mora si el otro no cumple o no ofrece cumplir lo que le incumbe", y que cuando "uno de los obligados cumple u ofrece cumplir su obligación, puede requerir al otro que cumpla". Artículo 1161 del Código Civil, supra, sec. 9313. Es decir, en las obligaciones recíprocas, ninguna de las partes contratantes puede exigir el cumplimiento de la obligación contraria sin antes cumplir u ofrecer el cumplimiento de la obligación propia. *Álvarez v. Rivera*, 165 DPR 1, 20 (2005); *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987).

### D. Consignación

La consignación judicial de un bien mueble o inmueble es un mecanismo mediante el cual una parte puede liberarse de su obligación. *ASR v. Ex Parte Proc. Rel. Fam.,* 196 DPR 944, 950 (2016). Este procedimiento se encuentra regulado en los Artículos 1131-1137 de nuestro Código Civil, supra, seccs. 9181-9187.

En síntesis, para que la consignación libere al deudor, es necesario cumplir con ciertos requisitos, a saber, que: (1) se hubiese ofrecido al acreedor la cantidad o cosas consignadas, (2) que el acreedor se hubiese negado a aceptarlas, y (3) que se le haya anunciado la consignación a las personas interesadas en el cumplimiento de la obligación. *Rivera Michel v. Registrador,* 38 DPR 882 (1928).

Para que la consignación sea eficaz, tendrá que ser previamente anunciada a las personas interesadas y tendrá que ajustarse estrictamente a las disposiciones que regulan el pago. Además, se hará depositando los bienes bajo autoridad judicial y

acreditando el ofrecimiento de pago y el anuncio de consignación. Una vez hecha la consignación, también, deberá notificarse a los interesados. *García v. Fernández*, 8 DPR 106, 107, 113 (1905); Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta. ed., Madrid, Reus 1967, Tomo VIII, Vol. I, a la pág. 725.

### III.

El peticionario recurre ante nos, alegando que el TPI-Bayamón se equivocó al negarse a expedir los fondos consignados, y en reiterarse en la orden del 31 de marzo de 2025. Aduce que el Foro Primario obra sesgadamente en su contra, que "no existe empatía" y que a la luz de la Ley 121-2019, 8 LPRA sec. 1511 *et seq.* y la Ley 54 de 15 de agosto de 1989, 8 LPRA sec. 601 *et seq.*, erró crasamente al no atender sus solicitudes para el desembolso de los $300,000.00 y la celebración de una vista. También, aduce que el proceder judicial es uno contrario a derecho.

Justipreciamos que, en el caso de marras, nos toca hacer una evaluación contractual sobre el acuerdo pactado entre las partes y acogido por el Foro Primario, mediante el dictamen de divorcio. Hemos estudiado con sumo detenimiento los documentos que obran en el expediente y hemos evaluado el tracto procesal cursado por el Foro Recurrido en atención a la demanda de autos. Surge de estos que aparenta existir una polémica interpretativa sobre cómo, y en qué orden, ha de cumplirse el acuerdo judicial en controversia. Basta una breve lectura de la sentencia de divorcio para apreciar que en la misma consta meramente el convenio entre las partes. Entre los acuerdos logrados por las partes, surge que el peticionario acordó desalojar la residencia en controversia a cambio de recibir $300,000.00 de la compraventa de esta. Es nuestra posición que, mediante los dictámenes recurridos, el TPI-Bayamón sólo promueve el cumplimiento del acuerdo.

Según el derecho previamente esbozado, nos encontramos frente a un acuerdo transaccional judicial, el cual tiene fuerza de ley entre las partes. El Foro Primario se encuentra forzado en derecho a hacer valer el mismo. Si bien es cierto que en estos los Tribunales estamos llamado a hacer interpretaciones restrictivas sobre estos, en el caso de epígrafe, el acuerdo transado entre las partes se encuentra supeditado a una compraventa. Y, aunque en la sentencia de divorcio no consta textualmente si el peticionario debe abandonar la propiedad para recibir los $300,000.00 o viceversa, justipreciamos que el desalojo del peticionario es necesario para concretizar la compraventa, de manera que Vargas Sanabria pueda tomar posesión de ella.

Por otro lado, cabe resaltar que el acuerdo transaccional entre las partes es uno de naturaleza recíproca. Es decir, la parte recurrida y el peticionario contrajeron un acuerdo bilateral, que por su naturaleza, exige el cumplimiento simultáneo de las prestaciones. Es nuestra posición que la recurrida cumplió con su parte del contrato, mediante la consignación de los $300,000.00.

Como reseñáramos previamente, la consignación adviene eficaz y libera de su obligación a la parte cuando hubiese ofrecido a la otra parte la cantidad consignada (la cual fue ofrecida y aceptada por el peticionario mediante el acuerdo transaccional) y haya anunciado la consignación del dinero. La recurrida notificó a la otra parte y ofreció copia de la evidencia de la consignación del dinero. Además, en su moción del 28 de marzo de 2025, la recurrida anunció que consignaría los $300,000.00 en el Foro Primario, por las trabas interpuestas por el peticionario para cumplir el acuerdo.

En síntesis, concluimos que el acuerdo entre las partes es uno recíproco, que demanda el cumplimiento simultáneo de las obligaciones pactadas, y que la recurrida, mediante la

consignación, satisfizo su parte. Sin embargo, estamos conscientes que al momento de la notificación de esta *"Sentencia",* los cuarenta y cinco (45) días concedidos por el TPI-Bayamón al peticionario para desalojar la propiedad fueron cumplidos el pasado 17 de mayo de 2025. Por esto último, y el derecho trazado, nos vemos forzados a *modificar la resolución,* a los fines de permitirle al peticionario retirar los $300,000.00 consignados a su favor.

Por último, las alegaciones sobre maltrato y abuso a la luz de la Ley 121, supra y la Ley 54, supra, son superfluas y desprovistas de eventos o hechos que las sustenten. Además, las partes se encuentran divorciadas, por lo que no existen obligaciones intrafamiliares entre estos.

**IV.**

Por los fundamentos antes expuestos, *expedimos el recurso solicitado, confirmamos el mismo respecto a la orden de desalojo, y lo modificamos a los fines de disponer, de manera paralela y simultánea al desalojo, el retiro de los fondos consignados.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones